EXHIBIT A

1

2

3

4

5

6                        IN THE CIRCUIT COURT FOR THE STATE OF OREGON

7                              FOR THE COUNTY OF MARION

| | | |
|---|---|---|
| 8  EMERALD BUELL, | ) | Case No._____21CV04659_____ |
| | ) | |
| 9       Plaintiff, | ) | **COMPLAINT—VIOLATIONS OF ORS** |
| | ) | **659A.030 (Sex Discrimination and** |
| 10      v. | ) | **Retaliation) ORS 659A.112 (Disability** |
| | ) | **Discrimination); ORS 659A.150-183** |
| 11  VERIZON WIRELESS SERVICES, LLC, | ) | **(Violation of Oregon Medical Leave Act);** |
| dba VERIZON WIRELESS, | ) | **and ORS 653.641 (Sick Leave Retaliation)** |
| 12 | ) | |
| Defendant. | ) | (Judge_____) |
| 13 | ) | |
| | ) | (Fee Authority: ORS 21.160(1)(c)) |
| 14 | ) | |
| | ) | (Prayer: $475,000.00) |
| 15 | ) | |
| | ) | (Jury Trial Requested; Not Subject to |
| 16 _____ | ) | Mandatory Arbitration) |

17        Plaintiff alleges:

18                              **JURISDICTION AND VENUE**

19                                         1.

20        Plaintiff, Emerald Buell ("Plaintiff"), is a resident of Marion County, Oregon. Defendant,

21   Verizon Wireless Services, LLC doing business as Verizon Wireless ("Defendant"), is a New

22   Jersey limited liability company licensed to do business in the state of Oregon, with its principal

23   place of business located in Basking Ridge, New Jersey. Defendant is an "employer" as that term

24   is defined in ORS Chapter 659A. Plaintiff requests a jury trial in this matter.

**Page 1—Complaint**
LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

2.

Plaintiff timely filed a Complaint with the Oregon Bureau of Labor and Industries ("BOLI") on November 12, 2019 and received a Right to Sue Notice from BOLI dated November 10, 2020. All conditions precedent to the filing of this Complaint have been met and exhausted.

3.

Venue is appropriate in this Court, because Defendant employed Plaintiff in Marion County, Oregon, the facts giving rise to this complaint occurred in Marion County, Oregon, and Defendant conducts regularly sustained business activity in Marion County, Oregon.

**FACTUAL ALLEGATIONS**

4.

On or about September 28, 2015, Defendant hired Plaintiff as a Solutions Specialist at the Keizer Station location.

5.

In or around February 2018, Plaintiff took short-term disability leave at Defendant in order to have surgery.

6.

On or around March 15, 2018, Plaintiff returned to work from being on short term disability for surgery. The doctor released her to work part time for two weeks and then return to work full time. When Plaintiff returned to work, Defendant hired a new assistant manager, James McCullough ("McCullough"), who Plaintiff now report to.

7.

Shortly after Plaintiff returned to work, McCullough started to make inappropriate comments toward her. McCullough started to call Plaintiff his "work wife," spoke about fondling

**Page 2—Complaint**

her breasts, and would told her how nice she looked, which then escalated to him saying, "thank you for looking nice for me today," or "you give me something to look forward to when coming to work," and "damn I like your hair like that; daddy like." McCullough also made the comment, "I would break your back if I had sex with you." Plaintiff opposed these comments and, in return, McCullough made inappropriate comments to her more frequently, became angry, or stated, "I like it when you play hard to get." All of this led to increased anxiety and his conduct continued until Plaintiff stopped working with him. When he spoke to Plaintiff he regularly looked her up and down. He regularly commented on Plaintiff's hair and her looking sexy for him.  Plaintiff changed how she wore her hair in an attempt to get him to stop making the comments. In addition, throughout Plaintiff's time working with him he regularly made inappropriate comments regarding female customers including, "she's fine as fuck," "she wants me," "I'd hit that," and "I'd break her."

8.

On or about April 3, 2018, an incision from a recent abdominal surgery began to leak and soiled Plaintiff's shirt. When she asked McCullough if she could go home to change, he responded, "Eww! That's fucking disgusting! Yeah, just hang on." While he continued to type on his computer, he stated, "You coming back here to tell me that is like you telling me you're on your period! Gross. Just gross!" Plaintiff responded, "No, that is absolutely not the same thing," to which he said, "Yes it is. Go home. I don't care."

9.

In or around April 2018, McCullough was in a bad mood at work and stated, "People are getting on my god damn nerves," and "I swear if I get asked one more stupid question," etc. While walking with a basket of accessories from behind the counter to the back room, McCullough approached Plaintiff and said. "Hurry up!" He then hit her in the back of the head.

**Page 3—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

10.

On or about April 27, 2018, Plaintiff took a medical leave of absence from Defendant.

11.

On or about August 2, 2018, she returned to work at Defendant.

12.

On numerous occasions and continuing until Plaintiff stopped working with McCullough, he came up to her and whispered inappropriate things in her ear including "you look good" and "you know you like it." Sometimes he would pinch the skin on Plaintiff's elbow or rub her elbow while doing this. On some occasions, he did this while Plaintiff was working with a customer. Plaintiff opposed this conduct by pulling her arm away, telling him to go away, or telling him to stop. Opposing the conduct was difficult during times when Plaintiff was engaged with a customer when he did it.

13.

In or around October 2018, Plaintiff unlocked the front inventory room and walked in with a basket of accessories and an Ipad. Once in the room, Plaintiff saw that McCullough was there as well. He stood up and started to move toward her, stating, "Oh, I see what you're doing. You're coming in here where there's no cameras," while his eyes looked her up and down. Plaintiff told him to "shut up" and she tried to move around him to locate the accessories that she needed. McCullough continued to stand in her way looking her up and down. This made Plaintiff extremely uncomfortable and she said, "Can you move?" He then stepped to the side laughing. As Plaintiff turned around to leave the inventory room, McCullough stood between Plaintiff and the door. He looked at her and smiled, and then slowly stepped to the side, and she walked out the door. Later on the same day, Plaintiff approached McCullough for help on a customer's account. As he was working on the Ipad, he said, "Oh, and earlier today, don't even think about

**Page 4—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

1   telling HR or anyone about that. I mean, you can, but it would be my word against yours and,

2   trust me, they'd believe me over you." Plaintiff said, "Okay?" He then laughed and said, "I'm

3   just kidding; but not really."

4                                           14.

5          In or around November 2018, as a customer left the store, Plaintiff said to her, "Thank

6   you. Have a good day!" McCullough said something similar to the customer and then started

7   mumbling about the female customer. McCullough said, "She's so tiny, I'd break that body!"

8   McCullough proceeded to tell Plaintiff about a sexual encounter he had after going to a bar. He

9   said, "One time there was this girl who wanted my nuts so bad. She was that size. She kept

10  letting me know she wanted to. I didn't even really want to. I just wanted to go home to sleep,

11  but she kept it up so I went to her house. I don't think she's ever been with a black dude before. I

12  just wasn't into it though." McCullough then put his hands out in front of him as if they were on

13  the female's body, and he began thrusting motions and rolling his eyes, in an apparent effort to

14  illustrate that he was not into it or bored. He then said, "So I gave her what she wanted, rolled

15  over, put my pants on, and left. Went to my house to sleep." McCullough then turned to Plaintiff

16  and said, "Shoot! I'd hurt you, too. Girl, I'd break your spine!" And then he engaged in thrusting

17  motions toward Plaintiff. She opposed his conduct.

18                                          15.

19         On or about November 12, 2018, Plaintiff was in the back room at Defendant with other

20  co-workers preparing for their day. McCullough walked over and called the morning huddle. At

21  the beginning of the huddle, McCullough said, "This morning I would like to address something.

22  It's been brought to my attention that some things have been said about me. Apparently nobody

23  likes me, and people dread working when they're working with me. Now, I don't know who said

24  it. I think I have an idea of who did. But if anyone has an issue with me, please tell me. Because,

**Page 5—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

1   if there's something that I'm doing or not doing that's bothering you, I can't do anything about it

2   until you let me know. So if there's anything anybody wants to say, tell me." Everyone was

3   silent for a moment and looked at each other when one co-worker, Jesus Macias, said, "We love

4   you!" McCullough then repeated his previous request to come talk to him if anyone had a

5   problem with him. Later in the day, given that Plaintiff's anxiety increased after the huddle, she

6   told McCullough that she was not feeling well and asked if she could take a work break and walk

7   over to Target. McCullough consented. When walking back to Defendant from Target, Plaintiff

8   saw McCullough in his car with his window rolled down. McCullough said to Plaintiff, "Hey!

9   Come here." As Plaintiff approached McCullough, he asked, "Are you feeling better?" I said

10  "no." He said, "Come sit down. It's cold. I need to talk to you anyway." Plaintiff sat in the

11  passenger side of McCullough's car. McCullough began the conversation with small talk about

12  how she was feeling and her family. He asked if Plaintiff wanted to have more kids, and she told

13  him that she was not sure. He said, "I got a vasectomy. That way I can fuck around and not

14  worry about it. So if some chick pops up and says she's pregnant, I can say, 'Um, no you're not

15  and, if you are, it's not mine 'cause that's impossible.'" McCullough brought up the subject of an

16  employee at Defendant complaining about him. He said, "I'm fucking pissed. I talked to Patty

17  about it, and she knows I'm fucking pissed. I'll find out who it is. Believe me. Me and Patty are

18  close. I've been in this job for years, and I've never had a compliance issue—a complaint on me.

19  Nothing. So I'm pissed." McCullough then looked at Plaintiff and said, "I consider you to be a

20  friend, too." He then told Plaintiff to speak up if she had a problem. He said, "You know you're

21  lucky to be sitting in my car, right?" Plaintiff said, "Ok?" He responded, "You are! Chicks love

22  my car. It's a two-seater, but there's been times when I have one girl in the seat and one girl on

23  the floor. Me and Jessica aren't married. I can't be tied down like that. I'm a sexual person. A

24  very sexual person. I love the chase. If a girl plays hard to get, I like it even more. I like the

**Page 6—Complaint**

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503) 585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

1  chase, and I'll try with a girl for a while until I hit it. Then once I do, I'm bored and over it, and

2  then I'm on to the next. Jessica may or may not know about it. She might be doing the same

3  thing. If she is, she's good at it like I am. We both have our location on at all times, so we know

4  where the other person is at all times. So when I'm at work, I talk to her on my personal phone.

5  If I'm trying to hit up another girl, to see if I can swing through, I use my work phone to do that.

6  If the chick doesn't answer, or can't, I don't care. Don't bother me. But if they do, then I'll drive

7  to their place but leave my personal phone at work so Jessica sees that I'm at work all day. I

8  leave and go do my thing, then come back to work." McCullough then looked at Plaintiff and

9  said, "You know, normally if there is a girl sitting in my car, where you're sitting, I am messing

10 around with them." Plaintiff responded, "Ok, time for me to go in now." She opened the car

11 door. Given that his car is low to the ground, her pants slipped down a bit as she was going from

12 a seated position to standing. McCullough said, "Ohhh. You're pants are coming off. See, you

13 like it." When Plaintiff returned to Defendant, she felt more anxious and nauseous. She went to

14 the restroom and began vomiting. Given that she was in the restroom for a long time and

15 growing more ill, she sent a text message to Robyn Lee ("Lee"), a supervisor at Defendant in

16 McCullough's absence, and McCullough. Plaintiff informed them that she was in the bathroom

17 feeling ill. McCullough responded by text, "Thank you for telling me you're in the bathroom!

18 Lol that is a great work wife. Lol On the serious side let me know if you need to go home."

19 McCullough texted Plaintiff again and said he could hear her throwing up.  Plaintiff told him that

20 she needed to go home. McCullough asked if she wanted him to take her home, and she told him

21 that she did not.  Before Plaintiff left, McCullough approached her and said he could take her

22 home. Plaintiff told him that she did not need a ride. He looked irritated and said, "Ok. I'm just

23 saying. I can take you because I'm already going to the store for cigarettes." Plaintiff told him

24 "no thanks," and left.

**Page 7—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

16.

On or about November 12, 2018, Plaintiff sent a text message to Patricia Long ("Long"), the general manager at Defendant's Keizer Station, reporting the behavior of McCullough.

17.

In the early morning, of November 13, 2018, Plaintiff received a responsive text message to the text message she had sent to Patricia Long on November 12, 2018. Long stated, "[s]orry, I am not in this morning, I am awake if you want to call me." Plaintiff called Long and explained to her what was happening, and how she had been repeatedly sexually harassed by McCullough. After telling Long about the inappropriate statements made by McCullough to her, Long said "[h]e said that to you?  I'm shocked.  I had no idea, you think you know someone, I had no idea this was going on!"  Long then explained that a report to Human Resources for Defendant was needed to be made.  Long asked Plaintiff if she would type up an email "explaining what's been going on." Plaintiff sent an email to David Aberle ("Aberle"), a member of Defendant's Human Resources, and Matt Austin ("Austin"), District Sales Manager for Defendant. Plaintiff was told to carbon copy Long on the email which she did. Long stated that she would communicate with Aberle.

18.

On or around November 13, 2018, Plaintiff sent the email she was instructed to send to Aberle and Austin. Plaintiff texted Long and informed her that the email had been sent.  Plaintiff received a responsive text which said, "I feel horrible Emerald you have been dealing with this. I wish I had known sooner but, now that I do I will make sure it is taken care of quickly and appropriately."

///

///

**Page 8—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

19.

That same day, Long told Plaintiff not to come into work.  She stated she would talk to Aberle, and they would try to avoid Plaintiff working alongside McCullough, but that Plaintiff would have to possibly come in Wednesday and Thursday (which are typically her days off). This required Plaintiff to attempt to find adequate babysitting, whereas she typically spent this time looking after her child.

20.

On or about November 13, 2018, Plaintiff spoke with Aberle in regard to McCollugh's sexual harassment towards her.  That evening Plaintiff texted Aberle to notify him that she was being asked to come in to work on Wednesday and Thursday, which were her scheduled days off, and that she was having difficulty finding a babysitter.  Plaintiff also told Aberle that she was not comfortable working at the store until the matter was resolved, or close to being resolved.  Plaintiff was worried that McCullough would come into the store while she was there.

21.

Shortly after that, on or about November 13, 2018, Plaintiff texted Long to notify her that Plaintiff was having difficulty finding a babysitter.  Plaintiff also stated that she did not feel comfortable working at the store until the matter was resolved or close to being resolved.  Long and Plaintiff spoke just after Plaintiff sent the text. Long said that she had spoken to Aberle about Plaintiff's difficulty finding a babysitter and being uncomfortable being at the store.  She also said, "I spoke with [Aberle] and unfortunately the fact that you can't find a babysitter has nothing to do with this situation, and you are required to work your 40 hours a week."

22.

Plaintiff went to work the following day, November 14, 2018.  When Plaintiff arrived Long asked her to come into her office.  In her office she told Plaintiff, "Austin will be coming

**Page 9—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

1  into our store sometime today, and will be questioning you and other people in the store about

2  [McCullough] and he is questioning other people at the other store as well."  Long then began

3  talking about the schedule indicating that she did not know how long the investigation would

4  continue for.  She also expressed the difficulty she had trying to work out a schedule where

5  McCullough and Plaintiff would not work together.  Long stated, "I talked with [Aberlie]

6  because [McCullough] is scheduled to come back to the store on Saturday, and he said it's up to

7  me, but I would be willing to give you a vacation day that day so you don't have to work with

8  him in the store."  In regard to the day of black Friday sales, Long stated, "Now while we're on

9  the subject, you know we have Black Friday right around the corner, and everyone in the store is

10  scheduled to work that day.  So do you think if I were to instruct [McCullough] not to talk to

11  you, and kind of stay in his lane, and you in yours, that would be ok?"

12                                                 23.

13         The direction of the conversation between Long and Plaintiff caused Plaintiff to begin

14  crying.  Plaintiff stated that this was the reason she did not want to come forward in the first

15  place, and Plaintiff said, "No, I don't want to work with him.  I'm not comfortable with that."

16  Long stated, [w]ell I can't guarantee that this will be resolved by then and like we said before,

17  you are required to work your forty (40) hours a week.  Now, I'm giving you a vacation day but I

18  believe that is your last one you have available, so until this situation is resolved, we don't have

19  many options."

20                                                 24.

21         Austin knocked on the door and entered into the meeting.  Long explained that they had

22  been discussing the Black Friday schedule, and Austin stated that they should have the situation

23  resolved before Black Friday. Austin stated that he had spoken to other employees at stores in

24  the surrounding area, who had stated that they had witnessed McCullough having inappropriate

**Page 10—Complaint**

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

1   language and behavior with female customers that come into the store." Plaintiff was thanked

2   for her promptness in sending the email and told that the investigation would continue, beginning

3   at Plaintiff store. Plaintiff indicated she would follow up with an additional email to include

4   other facts she had recalled.

5                                    25.

6          On or about November 17, 2018, Plaintiff spoke to a former co-worker at Verizon.

7   During that conversation Plaintiff was told that Long knew of McCullough's propensity towards

8   sexual harassment. When Long told the co-worker that she was going to have him transfer to the

9   store Plaintiff worked at, the co-worker told her they did not think it was a good idea to have

10  McCullough come to the Keizer store because of his known sexual harassment.

11                                   26.

12         On or about the morning of November 19, 2018, Aberle came to the store to interview

13  employees. He told Plaintiff that he would speak with Long first and then Plaintiff second. He

14  did not speak with Plaintiff until the end of the day causing anxiety throughout the day. Aberle

15  told Plaintiff that if McCullough remained employed they would work at different stores. He

16  said that probably would not be best for Plaintiff since she did not have a car implying that she

17  would have to be transferred for reporting the sexual harassment. Plaintiff had been working at

18  the store for three years and McCullough had only transferred there that year. Plaintiff asked

19  Aberle if he viewed the security footage. He said he had requested it but it probably would not

20  show anything. Plaintiff asked about security footage regarding other inappropriate conduct. He

21  expressed that because Plaintiff did not remember the exact day, it would be too much work to

22  have an employee review it and it was so long ago they may not have it.

23  ///

24  ///

**Page 11—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

27.

On or about November 20, 2018, while having an additional vacation day, Plaintiff was called by Long who stated that McCullough had been put on paid administrative leave until the completion of the investigation. McCullough was barred from entering any Verizon store, or contacting any employees other than Aberle and Austin.

28.

On or about November 23, 2018, Plaintiff was told by Long that McCullough would most likely be terminated.  The investigation had uncovered a lot of issues, and that even if Plaintiff's complaint had been "taken out of the mix," there was still enough to fire him.

29.

On or about November 24, 2018, Plaintiff was so thoroughly anxiety ridden that she was shaking and crying upon arriving at work. The night and morning before coming to work, Plaintiff had spent the evening vomiting. Plaintiff spent the early part of work making her way to the restroom to vomit.  She then began having a nose bleed. Plaintiff was instructed to get it to stop before they opened the store. Long arrived, instructed Plaintiff to tilt my head forward and not back. When the bleeding would stop, Plaintiff would have to vomit again, and the bleeding would start again. Plaintiff was struggling with anxiety, and Long seemed to become irritated with her. Plaintiff asked Long if she could go to urgent care, and Long replied "[y]ou can go, but it's going against your time and you'll be on your final warning."  Plaintiff replied to Long, "I know that if I miss work and call and it goes against my time but you've always said if I'm at work and have to leave that it would not go against my time."  Long responded, "[y]our time is your time.  It doesn't matter if you call in or leave early." This was different from their previous course of conduct, and Long had verbally stated before that if Plaintiff had come to work when she was sick, and she was needed to be sent home, it would not count against her time. Plaintiff

**Page 12—Complaint**

1   was unaware that she was on a final written warning for time off, but she needed to go to urgent

2   care. Long did not offer her medical leave, sick leave, or an accommodation for the anxiety that

3   was requiring her to miss work.

4                                                  30.

5              That same day, Plaintiff left work to go to urgent care.  Plaintiff was still vomiting and

6   suffering from a nose bleed.  The doctor gave her several shots for a migraine and for the

7   tension. Additionally, the doctor told her that she could not to drive or work after receiving the

8   medication. Plaintiff notified Long that she had been instructed not to return to work while on

9   the medication.  Plaintiff also sent a text message to Aberle stating the same information.  Long

10  instructed her to call Sedgwick and make a claim with the insurance company. Plaintiff notified

11  Long that she had filed a claim with Sedwick.  Long's return text stated, "I don't want you to

12  think that I am not being supportive of your situation with your time.  I just want to make sure

13  you have all the correct information available to you. I hope your questions about leaving early

14  get answered for you.  If you leave early during the middle of your shift due to illness then it

15  goes against your time as left early.  It's no different then if you come in late… You're late to

16  work the time that goes against you is the time not worked based on what you were scheduled.

17  So it doesn't go against your whole day just the time you clock out till the end of your shift.  I

18  hope that helps with any lingering questions you had after you and I talked about it Saturday."

19                                                 31.

20             On or about November 25, 2018, Plaintiff texted Long and Austin that she was not able

21  to come into work that day.

22                                                 32.

23             On or about November 26, 2018, Plaintiff texted Long and Austin stating that she would

24  not be able to come into work that day.  Plaintiff received a text from Long showing a screenshot

**Page 13—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

1   of an email saying that her FMLA was denied.  Long then texted, "just FYI.  Yesterday and

2   today will go against your time.  You have not worked enough hours to qualify for leave. Hope

3   you feel better… Just wanted to keep you updated." My return text stated, "I know, thank you.

4   They are doing it under medical leave short term."  That caused Long to text back, "I don't

5   believe that will be covered either based on your hours you actually worked this year.  STD

6   (Short Term Disability) got denied too." Shortly after that, Plaintiff was asked if she would be in

7   to work the following day. Plaintiff notified Long and Aberle that Sedgwick had processed the

8   claim under short term disability. Aberle indicated that typically means that an employee would

9   be out for an extended time.

10                                              33.

11          On or about November 27, 2018, Plaintiff notified Long via text message that she would

12   be taking a leave of absence.

13                                              34.

14          On or about December 12, 2018, Plaintiff received a voicemail message from Long

15   stating that Sedgwick had denied her claim. Long wanted to know if Plaintiff was going to

16   appeal the claim.  Long stated she still had Plaintiff on the work schedule. Plaintiff indicated that

17   she would continue with the appeal process. Following this conversation, each morning Plaintiff

18   notified Long via text message, "I am not able to come in to work today."

19                                              35.

20          Plaintiff's appeal was denied with Sedgwick.  Plaintiff was told it was due to her being

21   under the care of the wrong type of doctor. At the time, Plaintiff was receiving care from her

22   primary care physician and a licensed Therapist.  Due to Defendant denying her time off of

23   work, Plaintiff had no choice but to resign from her employment.

24                      **FIRST CLAIM—SEX DISCRIMINATION AND RETALIATION**

**Page 14—Complaint**

1

2

## (Violation of ORS 659A.030)

## (Count I-Sex Discrimination)

3

36.

4      Plaintiff re-alleges paragraphs 1–35. According to ORS 659A.030(1)(b), it is an

5   unlawful employment practice, "for an employer, because of an individual's race, religion,

6   color, sex, national origin, marital status or age if the individual is 18 years of age or older, . . .

7   to discriminate against such an individual in compensation or in terms, conditions or privileges

8   of employment." Discrimination committed by Shimmers affected Plaintiff's employment

9   opportunities and terms and conditions of employment and is a direct violation of the statute.

10

37.

11     Plaintiff suffered from discrimination based on her sex. Defendants' actions, and the

12  actions of its employees, created a hostile work environment toward females that Plaintiff was

13  subjected to. Defendants' hostile work environment, and the actions of its employees, as

14  provided in the paragraphs above, affected Plaintiff's ability to perform her job and caused

15  Plaintiff to suffer emotional distress in the performance of her job. Defendants' discrimination

16  negatively affected Plaintiff's employment in violation of ORS 659A.030(b).

17

38.

18     Defendant's retaliation toward Plaintiff constituted discrimination against Plaintiff under

19  ORS 659A.030.

20

39.

21     As a result of Defendants' unlawful employment actions, Plaintiff suffered and continues

22  to suffer humiliation, anxiety, distress, and impairment of Plaintiff's personal dignity and right to

23  be free from discrimination or interference with Plaintiff's statutory rights. Plaintiff has also

24

**Page 15—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

1    suffered, and continues to suffer, economic damages, including, but not limited to, past and

2    future wages, past and future benefits, and other expenses.

3    40.

4        Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for

5    emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other

6    non-pecuniary losses.

7    41.

8        Plaintiff is entitled to equitable relief as defined by ORS 659A.885(1) of reinstatement,

9    an award of back pay, lost benefits, and any other equitable relief this Court deems just and

10    proper.

11    42.

12        Plaintiff requests a declaration by this Court that Defendant violated ORS 659A.030.

13    43.

14        As a result of Defendant's violations of ORS 659A.030, Plaintiff requests equitable relief

15    and economic damages, including lost wages, not to exceed $75,000.00 and to be determined by

16    a jury at the time of trial. Plaintiff has suffered non-economic damages not to exceed

17    $400,000.00 and to be determined by a jury at the time of trial. In accordance with ORS 20.107

18    and ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees, costs, expert witness

19    fess, and disbursements in this action.

20    **(Count II-Retaliation)**

21    44.

22        Plaintiff re-alleges paragraphs 1-43.  According to ORS 659A.030(1)(f) it is an unlawful

23    employment practice, "for any person to discharge, expel or otherwise discriminate against any

24    other person because that other person has opposed any unlawful practice, or because that other

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

1  person has filed a complaint, testified or assisted in any proceeding under this chapter or has

2  attempted to do so." Discrimination committed by Shimmers, as alleged above, affected

3  Plaintiff's employment opportunities, compensation, and terms and conditions of employment

4  and is a direct violation of this statute.

5                                            45.

6      Plaintiff suffered from retaliation based on her complaints of sex discrimination as

7  described in the paragraphs above. Defendants employees' retaliation toward Plaintiff negatively

8  affected her compensation, terms, conditions, and privileges of employment in violation of ORS

9  659A.030(1)(f).

10                                           46.

11     As a result of Defendants' unlawful employment actions, Plaintiff suffered humiliation,

12  anxiety, distress, and impairment of Plaintiff's personal dignity and right to be free from

13  discrimination or interference with Plaintiffs statutory rights. As a result of Defendants'

14  conduct, Plaintiff suffered physical symptoms due to the harassing conduct and retaliation.

15  Plaintiff has also suffered economic damages, including, but not limited to, past wages, past

16  benefits, and other expenses.

17                                           47.

18     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for

19  emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other

20  non-pecuniary losses.

21                                           48.

22     Plaintiff is entitled to equitable relief, including, but not limited to, an award of back

23  pay, lost benefits, and other compensatory damages.

24  ///

**Page 17—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(t)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

1

49.

2

Plaintiff requests a declaration by this Court that Defendants violated ORS

3

659A.030(1)(f) in addition to any other equitable relief that this Court deems proper.

4

50.

5

As a result of Defendants' retaliation, Plaintiff has suffered economic damages, including

6

lost wages and front pay, not to exceed $75,000.00 and to be determined by a jury at the time of

7

trial. Plaintiff has suffered non-economic damages to be capped at $400,000.00 and to be

8

determined by a jury at the time of trial. The actions of Defendant, as described above, were

9

knowing, intentional and malicious. Plaintiff gives notice of her intent to amend this Complaint

10

to assert a claim for punitive damages.

11

51.

12

Pursuant to ORS 20.107 and ORS 659A.885, Plaintiff requests and is entitled to her reasonable

13

attorney fees in this action.

14

**SECOND CLAIM - STATE STATUTORY DISCRIMINATION**

15

**(Count 1–Disability Discrimination)**

16

52.

17

Plaintiff realleges paragraphs 1-51. Pursuant to ORS 659A.112, "It is an unlawful

18

employment practice for any employer to refuse to hire, employ, or promote, to bar or discharge

19

from employment or to discriminate in compensation or in terms, conditions or privileges of

20

employment because an otherwise qualified person is disabled." Defendant regarded Plaintiff

21

as disabled. Defendant's discrimination denied Plaintiff compensation, and adversely effected

22

the terms and conditions of employment, and the discharge of Plaintiff, all of which violate the

23

statute.

24

///

**Page 18—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

53.

Defendant violated ORS 659A.112 by discriminating in the compensation, terms and conditions of Plaintiff's employment, including, but not limited to, refusing to engage in the interactive process and refusing to accommodate Plaintiff.

54.

Plaintiff requests a declaration by this Court that Defendant violated ORS 659A.122.

55.

As a result of Defendant's disability discrimination, Plaintiff requests equitable relief and economic damages, including back pay, benefits, and front pay, in an amount to be determined at trial  and not to exceed $75,000.00 along with compensatory damages in an amount to be determined at trial and not to exceed $400,000.00. Pursuant to ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees in this action.

**(Count 2–Disability Discrimination Based on Retaliation)**

56.

Plaintiff realleges paragraphs 1-55.  Pursuant to ORS 659A.112, "It is an unlawful employment practice for any employer to refuse to hire, employ, or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because an otherwise qualified person is disabled."  Defendant retaliated against Plaintiff for requesting reasonable accommodation and complaining about disability discrimination.

57.

The  actions  of  Defendant's  occurred  after  Plaintiff  requested  reasonable accommodation.

58.

**Page 19—Complaint**

1   Plaintiff retaliated against Plaintiff, by taking adverse employment actions against

2   Plaintiff, including, but not limited to, refusing to engage in the interactive process, refusing to

3   reasonably accommodate Plaintiff, refusing to give her sick time, and refusing to allow her to

4   miss work.   These actions by Defendant constituted adverse employment actions in direct

5   violation of the statute.

6                                                   59.

7   As a result of Defendant's disability discrimination, Plaintiff requests equitable relief

8   and economic damages, including back pay, benefits, and front pay, in an amount to be

9   determined at trial and not to exceed $75,000.00 along with compensatory damages in an

10  amount to be determined at the time of trial and not to exceed $400,000.00. Pursuant to ORS

11  659A.885, Plaintiff is entitled to her reasonable attorney fees in this action.

12                              **(Count 3 –Hostile Work Environment)**

13                                                  60.

14  Plaintiff realleges paragraphs 1-59.   During the course of Plaintiff's employment with

15  Defendant's, Plaintiff suffered from a hostile work environment based on her disability.

16  Incidents of hostile work environment committed by Defendant resulted in Plaintiff being

17  denied compensation, and adversely affected Plaintiff's terms, conditions, and privileges of her

18  employment in violation of ORS 659A.112.   This hostile work environment was based on her

19  disability.

20                                                  61.

21  Plaintiff has a right, as a disabled person, to be treated fairly and reasonably.   Defendant

22  created a hostile work environment toward Plaintiff because he had a disability.

23                                                  62.

24  Defendant's hostile work environment, and the actions of its employees, as provided in

**Page 20—Complaint**

the paragraphs above, affected Plaintiff's ability to perform her job and caused Plaintiff to suffer

emotional distress in the performance of her job.  All of this affected the terms and conditions of

Plaintiff's employment.

63.

Defendant's hostile work environment toward Plaintiff, because she had a disability,

constitutes a violation of ORS 659A.112 for which Plaintiff is entitled to relief

64.

As a result of Defendant's retaliation, on the basis of Plaintiff engaging in protected

activity, Plaintiff requests equitable relief and economic damages, including back pay, benefits,

and front pay, in an amount to be determined at trial and not to exceed $75,000.00 along with

compensatory damages in an amount to be determined at the time of trial and not to exceed

$400,000.00.  Pursuant to ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees in

this action.

### THIRD CLAIM AGAINST DEFENDANT—SICK LEAVE RETALIATION

### (Violation of ORS 653.641)

65.

Plaintiff re-alleges paragraphs 1–64. In accordance with ORS 653.641, "It is an unlawful

practice for an employer or any other person to . . . retaliate or in any way discriminate against an

employee with respect to any term or condition of employment because the employee has . . .

taken sick time . . ."

66.

Plaintiff did not attend work for a reason qualified as sick leave under ORS 653.616.

Defendant retaliated against Plaintiff by changing the terms or conditions of his employment.

Defendant's action is a direct violation of ORS 653.641.

**Page 21—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

67.

As a result of Defendant's unlawful employment actions, Plaintiff has suffered economic damages, including, but not limited to, past wages, past benefits, and other expenses. Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay, past benefits, future pay, and future benefits.

68.

Plaintiff requests a declaration by this Court that Defendant violated ORS 653.641.

69.

As a result of Defendant's sick leave retaliation, Plaintiff has suffered economic damages, including lost wages and front pay, not to exceed $75,000.00 and to be determined by a jury at the time of trial. In accordance with ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fess, and disbursements in this action.

**FOURTH CLAIM AGAINST DEFENDANT—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

70.

Plaintiff realleges paragraphs 1-35. Plaintiff had an employer-employee relationship with Defendant. Defendant knew that the aforementioned conduct would cause severe mental or emotional distress or acted despite a high degree of probability that the mental or emotional distress would result.

71.

Defendant's conduct caused Plaintiff severe mental or emotional distress from the foreseeable highly unpleasant emotional reactions including fright, grief, shame, humiliation, embarrassment, anger, disappointment, and worry.

///

**Page 22—Complaint**

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

72.

The aforementioned continuing actions of Defendant consisted of an extraordinary transgression of contemporary standards of civilized conduct toward an employee.

73.

As a result of Defendant's intentional actions, Plaintiff has suffered non-economic damages in the amount of $400,000.00.

74.

The actions of Defendant, as described above, were knowing, intentional, and malicious. Plaintiff gives notice of his intent to amend the Complaint to assert a claim for punitive damages.

75.

Plaintiff requests her attorney fees and cost pursuant to ORS 20.107.

**WHEREFORE**, Plaintiff requests equitable relief, economic damages not to exceed $75,000.00 including back pay, benefits, and front pay, in addition to compensatory damages not to exceed $400,000.00 and to be determined by a jury at the time of trial. Plaintiff requests reinstatement to his previously held position. In accordance with ORS 82.010, Plaintiff requests an award of prejudgment interest on all claims at the legal rate for wages and benefits from May 12, 2018, until the date of judgment.  In accordance with ORS 20.107 and ORS 659A.885, Plaintiff requests her reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

DATED February 8, 2021.

 /s/Larry L. Linder
Larry L. Linder        OSB#010724
llinder@salememploymentlawyer.com
Richard Bosanko      OSB #160962
rbosanko@salememploymentlawyer.com
Attorneys for Plaintiff

**Page 23—Complaint**